IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RONALD GIT SUM AU, | ) | CIV. NO. 14-00271 SOM-BMK |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION TO DISMISS |
| vs. | ) | CASE PURSUANT TO THE |
| | ) | PARTIES' SETTLEMENT |
| THE ASSOCIATION OF | ) | AGREEMENT |
| APARTMENT OWNERS OF THE | ) | |
| ROYAL IOLANI, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**FINDINGS AND RECOMMENDATION TO DISMISS CASE PURSUANT TO THE PARTIES' SETTLEMENT AGREEMENT**

The Court received letter briefs, dated December 23, 2015 and December 28, 2015, (Docs. 133, 134), and was directed by Judge Susan Oki Mollway to issue Findings and Recommendations regarding whether to dismiss the case pursuant to the parties' Settlement Agreement. (Doc. 135.) Based on the following, the Court finds and recommends that dismissal of this case, pursuant to the parties' settlement agreement, is appropriate.

Inasmuch as the parties and the Court are familiar with the factual and procedural background of this case, the Court will only address herein the background that is relevant to the issue currently pending before the Court. (See

Doc. 112 for a more complete background of this matter.)

On April 3, 2015, the parties entered into a settlement following a settlement conference before the Court, and the material terms and conditions were placed on the record.   (Doc. 94, 96.)  Counsel for Defendants Hawaiiana Management Company and the Association of Apartment Owners of the Royal Iolani ("Association"), Phillip Li, put the material terms of the settlement on the record as follows:

> The parties have agreed that the plaintiff, Mr. Au, will dismiss his complaint and the claims asserted in that complaint against any and all parties who were either named, or could have been named, in that case with prejudice.  In exchange for that, the arbitration will take place between Hawaiiana Management Company, the . . . Association of Apartment Owners of Royal Iolani, and Mr. Au.

> And the point of that arbitration is to resolve the issues of what amount of attorney's fee -- what amount of maintenance fees, and other charges, and attorney's fees he was supposed to pay; what amount of attorney's fees and maintenance fees, and associated fees he actually did pay; to determine whether [] he was charged too much for those, or whether he didn't pay enough, and to affix a number that will determine who gets paid what.

> It will also address the issue of what amount of attorney's fees the Association would be entitled for pursuing the collection effort.

> The parties have also agreed that with respect to any issues related to a deposition of Ms. McGuire, which we've agreed that Mr. Au will be allowed to take -- I think on the 28th of April, it's already been scheduled -- that the arbitrator will assume jurisdiction over that to the extent that there are any discovery issues that exist concerning that, and the arbitrator will make all other decisions regarding discovery.

(Doc. 96 at 2-3.)  The parties further indicated that the dismissal of the case, with prejudice of all claims, "does not impact upon the rights of any of the parties to confirm the arbitration award in the appropriate court[.]"  (Doc. 96 at 4.)  Plaintiff then clarified that as a result of the dismissal, he would not be barred by collateral estoppel or res judicata in the arbitration.  (Id. at 4.)   Counsel for the AOAO and the Hawaiiana again clarified that

> [t]he only thing I want to make clear is that the arbitration that we're having is about what amount should have been paid . . . and -- I mean there's a lot of claims for violations of the constitution, those are not part of the arbitration . . . Those are all barred.  This is about the numbers.  This is, in any other case, for an Association trying to collect against the owner and the owner's right to make sure that he is only being charged what he's supposed to pay.

(Doc. 96 at 5(format altered).)  The Court then questioned Plaintiff as to whether he agreed with Counsel's representation, to which Plaintiff stated "Yes, I'm not raising due process claims or anything like that."  (Id.)  Plaintiff did indicate that he did not want to be barred from arguing, for example, which statute governing the right to charge specific amounts should be applied, to which Counsel for AOAO and Hawaiiana agreed because those types of issues "go to the question of the amount of fees anyway."  (Doc. 96 at 6-7.)  Counsel further explained that Plaintiff would be barred from asserting new claims, as well as other claims that are in his complaint, and that the arbitration "really, is supposed to be how much is supposed to have been paid and who gets what credit, but that issue of how much

fees for this whole process that we've been involved in, obviously, it's part of that, and that is part of the issue.  So that -- I don't have a problem with that."  (Doc. 96 at 7.)  Plaintiff agreed.  Id.  Essentially, the parties agreed that the arbitration would deal only with "[t]he amounts."  (Id.)  All parties agreed to the material terms of the settlement agreement and the agreement to arbitrate as stated on the record, (id. at 10-11), and the Court ordered the parties to submit the appropriate documentation by April 20, 2015.  (Id. at 12.)

On April 27, 2015, a status conference regarding settlement was held. (Doc. 97.)  The parties informed the Court that they were in disagreement over the terms of the settlement placed on the record.  (Id.)  On May 5, 2015, a further status conference regarding settlement was held, at which the parties discussed the scope of the arbitration.  (Doc. 99.)  The Court ordered the parties to file a motion to enforce or compel arbitration, and upon review and consideration, the Court would issue a written order.  (Id.)

On May 18, 2015, the parties filed their respective Motions to Compel Arbitration.  (Docs. 100, 101, 104.)  On May 26, 2015, the Court elected to decide this matter without a hearing, pursuant to Local Rule 7.2(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii.  (Docs. 106, 107.)  On July 30, 2015, the Court issued its Order Enforcing Agreement to Arbitrate.  (Doc. 112.)  The Court granted Defendant Laree McGuire's Motion to

Enforce Settlement and reiterated that Defendant McGuire is dismissed from this case with prejudice and neither McGuire nor her law firm will be parties to the arbitration.  (Doc. 112 at 10.)  With regard to the remaining parties' motions to compel arbitration, the Court clarified that the parties do not challenge the validity of the agreement to arbitrate, and instead, the sole issue before the Court was the scope of the parties' agreement.  (Doc. 112 at 12.)  The Court determined that the scope of the parties' agreement to arbitrate was limited only to a determination as to

> (1) what Au was assessed for maintenance fees and related costs; (2) what amount Au paid; (3) what amount Au was overcharged or undercharged, and which party is entitled to reimbursement; and (4) the amount of attorneys' fees and costs the AOAO is entitled to for its collection efforts.

(Doc. 112 at 15.)  The Court found that Plaintiff may raise claims raised in his Complaint, but only as a defense to any amount allegedly owed.  (Id.)  The Court clarified, however, that these defenses may be raised only as they relate to the amounts Plaintiff was assessed and/or amounts Plaintiff claims he is entitled to an offset for.  (Id.)  The Court clarified in its Order Enforcing Agreement to Arbitrate, and reiterates here, that Plaintiff agreed to these limitations on the record.  (See Doc. 96 at 6; Doc. 112 at 15.)  The Court also clarified that Plaintiff is barred from seeking any other general, compensatory, consequential, statutory, or exemplary damages against Defendants, nor may Plaintiff use the arbitration as a forum to

litigate the entirety of the claims raised by his Complaint in this case.  (Id. at 15-16.)  The Court found that these limitations were consistent with the terms of the agreement stated on the record, in open court.  (Id. at 16.)

On August 11, 2015, Plaintiff filed a Motion for Clarification of Order Enforcing Agreement to Arbitrate.  (Doc. 115.)  A hearing on Plaintiff's Motion was held on August 18, 2015, and the Court clarified that pursuant to the Order Enforcing Agreement to Arbitrate, "[e]ither party may rely upon any authority, including provisions of Hawaii statutory law, in support of either party's position with respect to the amounts owed."  (Doc. 117.)

On September 23, 2015, Plaintiff filed a Motion to Compel Arbitration, regarding a Notice of Default and Intent to Foreclose ("NDIF") dated July 13, 2015.  (Doc. 120.)  On October 15, 2015, the Court held a hearing on Plaintiff's Motion to Compel Arbitration.  (Doc. 130.)  The Court determined that the issues raised in Plaintiff's Motion, which relate to a prior NDIF, arise out of a separate agreement that is not part of the case currently pending before the Court.  (Id.)  Instead, the Court found that the issues raised in Plaintiff's September 23, 2015 Motion present a separate and distinct dispute that is properly addressed through a separate lawsuit.  (Id.)  Accordingly, the Court held that it had no authority to compel arbitration over such issues.  (Id.)  The Court clarified that the parameters of the settlement agreement and the arbitration have been defined in the

Court's prior orders.  (Id.)

On November 19, 2015, the Court ordered the parties to submit a Stipulation for Dismissal no later than December 18, 2015.  (Doc. 131.)  On December 21, 2015, the Court received a letter indicating that Defendants have signed the stipulation for dismissal with prejudice, but that Plaintiff has not responded to the stipulation other than an email dated December 7, 2015, which indicated that Plaintiff would be signing the stipulation.  (Docs. 132, 133.)  Judge Mollway ordered Plaintiff to either sign the stipulation for dismissal or provide an explanation to the Court and Defendants as to why he refused to sign the stipulation or why he may need an extension of time to do so.  (Doc. 132.)

On December 28, 2015, Plaintiff delivered a letter to the Court addressing the issues raised in Judge Mollway's order regarding the stipulation for dismissal.  (Doc. 134.)  Plaintiff now informs the Court that he refuses to sign the stipulation "because of the substantial prejudice to the agreed upon arbitration/mediation arising from the civil case."  (Doc. 134 at 1.)  Plaintiff also states that he is in the process of securing counsel to accept his case for mediation.  (Id.)  Plaintiff further states that he has filed a new action in State Court arising from the July 13, 2015 NDIF that was the subject of his September 23, 2015 Motion to Compel before this Court.  (Id.)  Plaintiff contends that upon dismissal with prejudice of his claims in the matter pending before this Court, Defendants

will move on the grounds of res judicata to dismiss his State Court claims. (Id. at

2.) Accordingly, Plaintiff requests that he Court withhold dismissing this matter.

(Id.)

As previously discussed in the Court's Order Enforcing Agreement to

Arbitrate, "[i]t is well settled that a district court has the equitable power to

**enforce summarily** an agreement to settle a case pending before it." Callie v.

Near, 829 F.2d 888, 890 (9th Cir. 1987) (citations omitted; emphasis added). An

agreement to arbitrate is a matter of contract between the parties, "it is a way to

resolve those disputes -- but only those disputes -- that the parties have agreed to

submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943

(1995). Section 2 of the Federal Arbitration Act ("FAA") provides, in relevant

part, that a provision in any agreement to settle controversies by arbitration "**shall

be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or

in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added). A

party aggrieved by the alleged refusal of another to arbitrate under an agreement to

arbitrate is permitted to petition any federal district court having jurisdiction over

the matter "for an order directing that such arbitration proceed in the manner

provided for in such agreement." 9 U.S.C. § 4. By its terms, the FAA "leaves no

place for the exercise of discretion by a district court, but instead mandates that

district courts *shall* direct the parties to proceed to arbitration on issues as to which

an arbitration agreement has been signed." <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470 U.S. 213, 218 (1985) (emphasis added). The Court's role under the FAA, therefore, is limited to determining (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue. <u>Chiron Corp. v. Ortho Diagnostic Sys., Inc.</u>, 207 F.3d 1126, 1130 (9th Cir. 2000). If the response is affirmative on both counts, then the Act requires the Court to enforce the arbitration agreement in accordance with its terms. <u>Id.</u>

Here, the Court finds that the parties do not dispute that a valid agreement to arbitrate exists. In fact, this Court has clarified the scope of the parties' agreement to arbitrate on at least three separate occasions. Moreover, the parties have agreed, on the record, that Plaintiff will dismiss all claims in his Complaint, with prejudice, and that the parties will enter into arbitration to address the limited issue of what amounts are owed between the parties. Accordingly, the Court finds that there is nothing left to clarify for the parties regarding the validity, existence, or scope of the arbitration agreement and all claims arising out of this case are subject to the parties' agreement to arbitrate. Therefore, under controlling Ninth Circuit precedent, the Court finds and recommends that dismissal of this case is appropriate. <u>Sparling v. Hoffman Constr. Co.</u>, 864 F.2d 635, 638 (9th Cir. 1988) (noting that the FAA authorizes a court to grant a stay pending arbitration, but it does not "limit the court's authority to grant a dismissal" where the court

requires a plaintiff "to submit all claims to arbitration").

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, January 4, 2016.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Au v. The Association of Apartment Owners of the Royal Iolani, et al., Civ. No. 14-00271 SOM-BMK; FINDINGS AND RECOMMENDATION TO DISMISS CASE PURSUANT TO THE PARTIES' SETTLEMENT AGREEMENTER ENFORCING AGREEMENT TO ARBITRATE.